*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ULYSSES MARCUS DOYLE III,

Defendant-Appellant.

UNPUBLISHED
September 18, 2025
12:03 PM

No. 365981
Wayne Circuit Court
LC No. 21-000640-01-FC

Before: CAMERON, P.J., and MURRAY and KOROBKIN, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial convictions of first-degree murder, MCL 750.316(1)(a); felon in possession of a firearm, MCL 750.224f; and two counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced as a fourth-offense habitual offender, MCL 769.12, to life in prison without the possibility of parole for the first-degree murder conviction, 1 to 15 years' imprisonment for the felon-in-possession conviction, and two years' imprisonment for each felony-firearm conviction. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arose from a shooting at Kelly Car Wash, where defendant and Orlando Thomas (the victim) both worked for several years. On October 20, 2020, at about noon, Onesteven Thomas, the victim's brother and another car wash employee, noticed defendant arguing with the victim at the end of the wash tunnel. The victim started drying a car, but defendant thought it was his turn to dry. According to Onesteven, during the argument, defendant shouted "don't nobody stand by [the victim]," before the victim walked off from the car wash. Defendant then approached Onesteven and said he was going to kill the victim.

Onesteven noticed defendant get into his black truck, with his girlfriend Diamond Jones and his two children, aged two and four, inside, to briefly follow the victim before returning to the car wash. They remained in the truck until the victim returned to the car wash later that afternoon. When the victim approached defendant's car, defendant shot him once in the chest. The victim fell to the ground and defendant shot him once more before leaving the car wash.

The car wash manager Sondradeneen Beam called the police, and Onesteven attempted to help the victim. Detroit Police Department (DPD) Detective Jeffery Cooper interviewed witnesses and watched surveillance video of the shooting. After identifying defendant's truck and cell phone, Cooper located defendant in Ohio and turned the case over to the United States Marshals Service. Defendant was arrested a month later.

During the first pretrial conference, defendant asserted that he wanted to proceed to trial, but would entertain plea offers. The prosecution offered defendant two different plea deals, which defendant rejected. Trial followed and, before jury deliberations, defense counsel requested inclusion of M Crim JI 7.3 (Lesser Offenses: Involuntary Manslaughter) in the final jury instructions, to which the court agreed over the prosecution's objections. During her closing argument, defense counsel briefly addressed involuntary manslaughter. However, before reading the final jury instructions, the trial court removed M Crim JI 7.3, but added the instruction for voluntary manslaughter as a lesser included offense to murder, M Crim JI 16.9, as well as M Crim JI 16.8 (Voluntary Manslaughter) and 16.21 (Inferring State of Mind). Defendant was ultimately convicted and sentenced as noted.

After filing his claim of appeal, defendant moved in the trial court for a new trial or an evidentiary hearing under *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973), asserting ineffective assistance of counsel. The trial court denied the motion.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that his trial counsel was ineffective for: (1) providing infirm legal advice at the plea stage leading to the rejection of two favorable plea offers; (2) failing to request a jury instruction for defense of others; and (3) proceeding to trial on a flawed understanding of homicide law by requesting the instruction for involuntary manslaughter. Accordingly, defendant asserts, the trial court erred when it denied his motion for a new trial and evidentiary hearing.

## A. STANDARDS OF REVIEW

"The question whether defense counsel performed ineffectively is a mixed question of law and fact; this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of constitutional law." *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). "[A] trial court's factual findings in that regard are reviewed for clear error and cannot be disturbed unless 'the reviewing court is left with a definite and firm conviction that the trial court made a mistake.' " *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014), quoting *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011). However, "because no *Ginther* hearing was held, our review is limited to mistakes apparent on the record." *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009).

"We review for an abuse of discretion a trial court's decision to grant or deny a new trial. An abuse of discretion occurs when the trial court's decision is outside the range of principled outcomes." *People v Russell*, 297 Mich App 707, 715; 825 NW2d 623 (2012) (quotation marks and citation omitted). "A trial court's decision to hold an evidentiary hearing is generally reviewed for an abuse of discretion." *People v Danto*, 294 Mich App 596, 613-614; 822 NW2d 600 (2011). "A trial court necessarily abuses its discretion when it makes an error of law." *People v Franklin*,

-2-

500 Mich 92, 100; 894 NW2d 561 (2017) (quotation marks and citation omitted). "The facts supporting the grant or denial of an evidentiary hearing are reviewed for clear error, and the application of the law to those facts is reviewed de novo." *Id*. "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made." *People v Lanzo Constr Co*, 272 Mich App 470, 473; 726 NW2d 746 (2006).

## B. DEFENSE-OF-OTHERS AND INVOLUNTARY MANSLAUGHTER INSTRUCTIONS

We hold that defendant is not entitled to a new trial on the basis that counsel was ineffective for failing to request a jury instruction on defense of others and for proceeding to trial on a flawed understanding of homicide law by requesting the involuntary manslaughter instruction.

"A defendant must meet two requirements to warrant a new trial because of the ineffective assistance of trial counsel." *Armstrong*, 490 Mich at 289-290. "To establish a claim of ineffective assistance of counsel a defendant must show that counsel's performance was deficient and that counsel's deficient performance prejudiced the defense." *People v Fyda*, 288 Mich App 446, 450; 793 NW2d 712 (2010).

"Trial counsel's performance is deficient when it falls below an objective standard of professional reasonableness." *People v Hughes*, 339 Mich App 99, 105; 981 NW2d 182 (2021). To demonstrate deficient performance, "the defendant must overcome the strong presumption that counsel's assistance constituted sound trial strategy." *Armstrong*, 490 Mich at 290. "When reviewing defense counsel's performance, the reviewing court must first objectively 'determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.' " *People v Jackson (On Reconsideration)*, 313 Mich App 409, 431; 884 NW2d 297 (2015), quoting *Strickland v Washington*, 466 US 668, 690; 104 S Ct 2052; 80 L Ed 2d 674 (1984). Once a defendant has demonstrated deficient performance, he must then show that "but for counsel's deficient performance, a different result would have been reasonably probable." *Armstrong*, 490 Mich at 290. "Reasonable probability means 'a probability sufficient to undermine confidence in the outcome.' " *People v Leffew*, 508 Mich 625, 637; 975 NW2d 896 (2022), quoting *Strickland*, 466 US at 694.

Defendant argues defense counsel was ineffective for failing to request the defense-of-others jury instruction. "Under the defense-of-others doctrine, one may use force in defense of another when he or she reasonably believes the other is in immediate danger of harm and force is necessary to prevent the harm; deadly force is permissible to repel an attack which reasonably appears deadly." *Leffew*, 508 Mich at 638 (quotation marks, citation, and alteration omitted). "As with self-defense, defense of others is generally not available to a person who is the initial aggressor." *Id*.

The defense-of-others instruction, M Crim JI 7.21, states:

(1) The defendant claims that [he / she] acted lawfully to defend _____. A person has the right to use force or even take a life to defend someone else under certain circumstances. If a person acts in lawful defense of another, [his / her] actions are justified and [he / she] is not guilty of [*state crime*].

(2) You should consider all the evidence and use the following rules to decide whether the defendant acted in lawful defense of another. Remember to judge the defendant's conduct according to how the circumstances appeared to [him / her] at the time [he / she] acted.

(3) First, when [he / she] acted, the defendant must have honestly and reasonably believed that _____ was in danger of being [killed / seriously injured / sexually assaulted]. If [his / her] belief was honest and reasonable, [he / she] could act at once to defend _____, even if it turns out later that the defendant was wrong about how much danger _____ was in.

(4) Second, if the defendant was only afraid that _____ would receive a minor injury, then [he / she] was not justified in killing or seriously injuring the attacker. The defendant must have been afraid that _____ would be [killed / seriously injured / sexually assaulted]. When you decide if [he / she] was so afraid, you should consider all the circumstances, such as: [the conditions of the people involved, including their relative strength / whether the other person was armed with a dangerous weapon or had some other means of injuring _____ / the nature of the other person's attack or threat / whether the defendant knew about any previous violent acts or threats made by the attacker].

(5) Third, at the time [he / she] acted, the defendant must have honestly and reasonably believed that what [he / she] did was immediately necessary. Under the law, a person may only use as much force as [he / she] thinks is needed at the time to protect the other person. When you decide whether the force used appeared to be necessary, you may consider whether the defendant knew about any other ways of protecting _____, but you may also consider how the excitement of the moment affected the choice the defendant made.

(6) The defendant does not have to prove that [he / she] acted in defense of _____. Instead, the prosecutor must prove beyond a reasonable doubt that the defendant did not act in defense of _____.

"Trial counsel's failure to request a jury instruction may constitute an unreasonably deficient level of performance." *People v Yeager*, 511 Mich 478, 490; 999 NW2d 490 (2023). However, "an affirmative-defense instruction is not automatic upon request." *Leffew*, 508 Mich at 644. "In order to properly raise the defense, the defendant has the burden of producing some evidence from which the jury can conclude that the essential elements of [the defense] are present." *Id.* (quotations marks and citation omitted; alteration in original). "The defendant's burden is not a heavy one." *Id.* "[A] defendant who puts forward some evidence in support of their affirmative-defense theory is entitled to an instruction on that theory." *Id.*

At trial, defendant did indeed testify about his tenuous relationship with the victim, and fear for his family on the day of the shooting. Testifying about the fight he and the victim got into in 2018, defendant stated that the fight occurred because he saw the victim arguing with Jones, and when he approached, the victim threw him to the ground. Defendant said that he left his job

-4-

at the car wash as a result, fearing for his family's safety, but returned years later during the COVID-19 pandemic to make extra money.

With regard to the day of the shooting, defendant testified that the victim threatened him during their argument, telling defendant he was going to shoot defendant's children. Further, according to defendant, while he was sitting in his truck with Jones and his children after the argument, a black Tahoe pulled behind him. A man in a "Jason" mask got out of the Tahoe, which frightened him, and a second man wearing a white bandana made a shooting gesture toward defendant.

Defendant remained in the car with Jones and his children when the victim approached. Defendant testified that he felt nervous and worried about the safety of his children. Jones had a concealed pistol license, and defendant grabbed the gun in her purse and shot the victim. Defendant stated that he did not want to harm the victim, and admitted that he left the scene and fled to Ohio, but asserted he did so to protect his children.

From the above, it appears the defense-of-others instruction would have been appropriate. Nevertheless, even assuming, without deciding, that defense counsel performed deficiently by failing to request the defense-of-others instruction on the basis of defendant's testimony, see *Leffew*, 508 Mich at 644, defendant has not met his burden of establishing prejudice as a result of defense counsel's deficient performance. Much of the evidence presented at trial contradicted defendant's version of events and claims of fear for his family. Beam and Maurisha Stewart, another car wash employee, testified that after the argument on the day of the shooting, defendant told them to stay away from the victim because he was going to kill the victim. Beam also stated that she had never seen the victim with a gun, and Stewart testified that she did not hear the victim threaten defendant or his children. And defendant admitted, on cross-examination, that he never saw the victim reach for a gun, or in possession of a gun, at all. Rather than take the opportunity to drive away, defendant shot the victim twice, the second time after the victim had fallen to the ground.

Further, a review of the car wash surveillance video from the day of the shooting, played for the jury at trial, contradicted some of defendant's testimony regarding the reasons he was fearful that the victim was a danger to his children. Defendant asserts in his brief on appeal that the Tahoe which pulled into the parking lot while he and his family were sitting in the truck blocked his exit. But the surveillance video showed defendant drive off immediately after the shooting, and defendant admitted on cross-examination that he could have left the parking lot at any time, though he asserted he was worried someone would shoot at him as he drove away. The video also confirmed that a person wearing a Jason mask was present, as defendant testified, but does not show that person approach defendant's car. And although the video shows that the man wearing the bandana made a quick shooting gesture into the air, it further shows that he did so while standing far away from defendant and around others at the car wash. Additionally, on cross-examination, defendant admitted that neither the man with the Jason mask nor the man with the bandana approached his car.

Most importantly, the trial court instructed the jury as to self-defense. Specifically, the trial court instructed the jury that: "The Defendant claims that he acted in lawful self-defense. A person has the right to use force or even to take a life to defend themselves under certain

circumstances." And the following self-defense instructions given by the court specifically address the defense of another person:

> Further, a person is not required to retreat if he or she has not or is not engaged in the commission of a crime at the time the deadly force is used, and has a legal right to be where he or she is at the time, and has an honest and reasonable belief that the use of deadly force is necessary to prevent imminent death of himself or *another person*.

*  *  *

> The individual honestly and reasonably believes that the use of deadly force is necessary to prevent imminent death or great bodily harm to himself or to *another individual*. [Emphasis added.]

Thus, the jury was instructed that, if all the elements of self-defense were not disproved, defendant was entitled to the defense even if it was in defense of another. Our Supreme Court has referred to the doctrines of self-defense and defense of others as "sibling[s]," *Leffew*, 508 Mich at 638,[1] and the Model Criminal Jury Instructions for each are nearly identical, see M Crim JI 7.15 and 7.21.

A jury is presumed to follow its instructions, *People v Bruner*, 501 Mich 220, 228; 912 NW2d 514 (2018), and on the basis of the above instructions and evidence, the jury rejected any implication of self-defense, whether defense of "himself" or "another individual," and convicted defendant of first-degree murder. " 'Even if the instructions are somewhat imperfect, reversal is not required as long as they fairly presented the issues to be tried and sufficiently protected the defendant's rights.' " *Leffew*, 508 Mich at 646-647, quoting *People v Aldrich*, 246 Mich App 101, 124; 631 NW2d 67 (2001). "The jury instructions 'must include all elements of the crime charged, and must not exclude from jury consideration material issues, defenses or theories if there is evidence to support them.' " *People v Armstrong*, 305 Mich App 230, 240; 851 NW2d 856 (2014), quoting *People v Reed*, 393 Mich 342, 349-350; 224 NW2d 867 (1975).

Because the self-defense instructions provided referenced the defense of others, and the defense-of-others instruction would have been nearly identical to that provided for self-defense, we hold that the instructions given did not exclude from consideration defendant's defense-of-others justification for the shooting. In light of this conclusion, the dearth of evidence contradicting defendant's account of the day of the shooting, defense counsel's argument on self-defense, and the jury's conviction of defendant for first-degree murder on the basis of the evidence despite the self-defense instruction, we hold defendant has failed to demonstrate that "but for

---

[1] See also *State v Valdez*, 12 NW3d 191, 197 (Minn, 2024) (reasoning "we have generally stated that a defense-of-others claim 'parallels' self-defense"); *State v Chandler*, 2017-Ohio-8573; 99 NE3d 1255, 1259-1260 (Ohio App, 2017) ("With respect to the self-defense of another jury instruction, defense of another is similar to a self-defense claim, but the person claiming self-defense stands in the shoes of the person whom he is aiding.").

counsel's deficient performance, a different result would have been reasonably probable."
*Armstrong*, 490 Mich at 290.

The same is true for defendant's assertion that defense counsel was ineffective as a result of her flawed understanding of homicide law—namely, requesting the involuntary manslaughter instruction and addressing involuntary manslaughter in her closing argument.

The prosecution concedes, and we agree, that defense counsel's request for an involuntary manslaughter instruction and discussion of involuntary manslaughter in her closing argument demonstrated deficient performance. Defense counsel requested that the trial court include in the final jury instructions M Crim JI 7.3 (Lesser Offenses: Involuntary Manslaughter), over the prosecution's objection that the instruction was unwarranted because no evidence existed that the shooting was accidental. The trial court initially agreed with defense counsel's request, leading defense counsel to address involuntary manslaughter in her closing argument as follows:

> I'm also asking the Judge to give you the instruction of a lesser charge. Don't get confused by my lesser charge. I want a not-guilty verdict. But if somebody somewhere is like, um, the lesser charge says, if a Defendant—it's for negligent homicide, involuntary manslaughter, and the Judge will read everything.
>
> However, even if the Defendant is not guilty of murder he may be guilty of a less serious offense if he willingly did something that was grossly negligent toward a human life, or if he intended to cause injury, if a gun went off as purposefully pointed or aimed at someone he may be guilty of involuntary manslaughter.
>
> So if you think he was grossly negligent by aiming a gun at somebody and firing then come down on the lesser charge. But I believe he is not guilty because he reasonably believed that he was in fear.

However, before reading the final jury instructions, the trial court removed M Crim JI 7.3, and added instructions related to voluntary manslaughter instead, including M Crim JI 16.8, 16.9, and 16.21.

An instruction on involuntary manslaughter is warranted only "if supported by a rational view of the evidence." *People v Gillis*, 474 Mich 105, 137; 712 NW2d 419 (2006) (quotation marks and citation omitted). Here, the instruction would have been entirely inconsistent with the self-defense theory advanced by defendant and defense counsel throughout trial. " 'A finding that a defendant acted in justifiable self-defense necessarily requires a finding that the defendant acted intentionally, but that the circumstances justified his actions.' " *People v Dupree*, 486 Mich 693, 707; 788 NW2d 399 (2010), quoting *People v Heflin*, 434 Mich 482, 503; 456 NW2d 10 (1990). In contrast, at the time,[2] M Crim JI 7.3 provided, in part:

---

[2] The model jury instruction has since been amended.

[E]ven if the defendant is not guilty of murder, [he / she] may be guilty of a less serious offense. [If (he / she) willingly did something that was grossly negligent toward human life or if (he / she) intended to cause injury / If the gun went off as (he/she) purposely pointed or aimed it at someone], [he / she] may be guilty of involuntary manslaughter. [M Crim JI 7.3(1).]

Defendant testified not that the gun went off when he intentionally pointed it at the victim, or that he acted with gross negligence, but that he shot the victim and was justified in doing so for the safety of his children in accordance with the theory of self-defense or defense of others. And defense counsel clearly focused on self-defense throughout trial. She asked the prosecution's witnesses if they heard the victim threaten defendant and his children, and focused her questioning to defendant on: (1) his tenuous relationship with the victim; (2) his first fight with the victim; (3) the victim's threats; (4) his reasons for remaining at the car wash; and (5) the involvement of his children. Accordingly, defense counsel appeared to misunderstand the law, and her performance fell below an objective standard of reasonableness, when she requested the involuntary manslaughter instruction and discussed that instruction in her closing argument. See *Hughes*, 339 Mich App at 105.

Nevertheless, defendant has failed to demonstrate that but for counsel's error, "a different result would have been reasonably probable." *Armstrong*, 490 Mich at 290. Defense counsel admitted at sentencing that she believed defendant was prejudiced by her failure to address the elements of voluntary manslaughter in her opening statement or closing argument, stating, "I could not explain to the jury time to cool off, what it meant, how it affected my client, how it, in fact, affected the case." In doing so, she was referencing the instruction the trial court read to the jury on voluntary manslaughter, which provided in part, "The crime of murder may be reduced to voluntary manslaughter if the Defendant acted out of passion or anger brought about by adequate cause and before the Defendant had a reasonable time to calm down." But the jury heard this instruction, as well as testimony from defendant that the victim had threatened to shoot his children, and that he feared for their safety, discussing the victim's actions and the surrounding circumstances, including the masked men, and still convicted defendant of first-degree murder. And, as described in greater detail above, there was ample evidence introduced at trial which contradicted defendant's account of the circumstances and supported his convictions. Consequently, defendant has failed to establish that, had defense counsel not incorrectly requested the involuntary manslaughter instruction, and discussed voluntary manslaughter instead, the outcome of the trial would have been different.

## C. PLEA NEGOTIATIONS

Finally, defendant argues that defense counsel was ineffective during plea negotiations because she provided flawed advice on the basis of her misunderstanding of the law, and that the trial court abused its discretion when it denied his request for an evidentiary hearing to establish additional facts related to this argument.

"As at trial, a defendant is entitled to the effective assistance of counsel in the plea-bargaining process." *People v Douglas*, 496 Mich 557, 591-592; 852 NW2d 587 (2014). "In demonstrating prejudice, the defendant must show the outcome of the plea process would have been different with competent evidence." *Id*. at 592 (quotation marks and citation omitted). "The

defendant has the burden of establishing the factual predicate of his ineffective assistance claim." *Id*. A remand for an evidentiary hearing is appropriate when a defendant "set[s] forth any additional facts that would require development of a record to determine if defense counsel was ineffective." *People v Williams*, 275 Mich App 194, 200; 737 NW2 797 (2007).

Defendant asserts, on appeal and in the affidavit he attached to his motion for a new trial, that he would have accepted one of the plea offers presented had he known defense counsel had a flawed understanding of homicide law, stating in his affidavit: "We never discussed involuntary manslaughter. We never discussed voluntary manslaughter. When I asked about our defense strategy, or when [defense counsel] talked about our defense strategy, she only ever emphasized self-defense." Yet he then proceeded to reiterate the timeline of events in his affidavit, including feeling trapped and fearful for his and his children's safety, all of which he testified to at trial, and supports defense counsel's focus on the theories of self-defense or defense of others as sound trial strategy. See *Armstrong*, 490 Mich at 290. And defendant presented no evidence that he relied on defense counsel's misunderstanding to reject the plea deals. Again, defendant bears the burden of establishing the factual predicate for his ineffective assistance of counsel argument, *Douglas*, 496 Mich at 592, as well as setting forth additional facts that would require development of the record with an evidentiary hearing, *Williams*, 275 Mich App at 200.

Defendant's reliance on *Lafler v Cooper*, 566 US 156; 132 S Ct 1376; 182 L Ed 2d 398 (2012), is misplaced. In *Lafler*, 566 US at 160-161, the defendant was presented a plea offer on two occasions, and expressed his willingness to accept after admitting his guilt, but rejected the offers "allegedly after his attorney convinced him that the prosecution would be unable to establish his intent to murder [the victim] because she had been shot below the waist." Here, defendant did not admit guilt, and did not express his willingness to accept a plea offer, stating only at the first pretrial conference that he wanted to proceed to trial but would "entertain" plea offers. Further, in *Lafler*, 566 US at 163, the parties agreed that defense counsel performed deficiently by advising the defendant to reject a plea offer on the ground that he could not be convicted at trial. The parties have come to no such agreement regarding the first prong of the *Strickland* analysis here. It also bears noting that when defendant rejected each of the plea offers, he confirmed to the court that it was his decision to reject the offers, and that he understood the consequences of doing so.

Accordingly, we reject defendant's argument that defense counsel was ineffective during plea negotiations, and that the trial court abused its discretion when it denied his request for an evidentiary hearing.

Affirmed.

/s/ Thomas C. Cameron
/s/ Christopher M. Murray
/s/ Daniel S. Korobkin